**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


**SKYHAWKE TECHNOLOGIES, LLC**                                        **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 3:10cv708-TSL-MTP**

**DECA INTERNATIONAL CORP.**                                        **DEFENDANT**


### ORDER DENYING MOTION TO TRANSFER VENUE

This matter is before the court on the [20] Motion to Change Venue filed by Defendant DECA International Corporation (DECA).  Having duly considered the motion [20], the applicable legal standards, and the other submissions by the parties, the court finds that the motion should be DENIED.

#### *Factual Background*

Plaintiff Skyhawke Technologies, LLC (Skyhawke) accuses DECA of infringing on two patents of which Skyhawke is the assignee–Patent No. 6,456,938 (hereinafter the "938 patent"), entitled "Personal DGPS Golf Course Cartographer, Navigator and Internet Web Site with Map Exchange and Tutor", and Patent No. 7,118,498 (hereinafter the "498 patent"), entitled "Personal Golfing Assistant and Method and System for Graphically Displaying Golf Related information and for Collection, Processing and Distribution of Golf Related Data." Skyhawke is a limited liability company with its principal place of business in Ridgeland, Mississippi. DECA is a California corporation with its principal place of business in La Palma, California. *See* Am. Compl. [23]. DECA is a wholly-owned subsidiary of DECA System Inc., a Korean corporation. *See* Def.'s Disclosure Statement [16]; Hong Decl. [20-1] at 3.

Skyhawke alleges that DECA has made, caused to be made, imported, caused to be imported, used, offered to sell, sold, and caused to be sold products (i.e., the Golfbuddy World Platinum product) in Mississippi, which has infringed, induced infringement, and/or contributed to infringement on the 938 patent and the 498 patent. Am. Compl. [23] at 2-3.

In the instant motion [20], DECA asks the court to transfer this case from the Southern District of Mississippi (hereinafter "Southern District") to the Central District of California (hereinafter "Central District").

### *Transfer of Venue Standard*

For the convenience of parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C.A. § 1404(a). "[T]he  plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

> [W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer.

*In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008)("Volkswagen II"). A decision to transfer venue under Section 1404 is committed to the sound discretion of the transferring judge. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988).

The threshold issue is whether the claim could have been filed in the judicial district to which the movant is seeking to transfer the case. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)("Volkswagen I"). Venue is proper in any district in which any defendant resides. 28

U.S.C.A. §1391(b)(1). A defendant corporation is deemed to reside in any district in which it is subject to personal jurisdiction at the time the action is commenced. *Id*. at §1391(c).

In order to determine the convenience to the parties and witnesses the court applies private and public interest factors. *Volkswagen I*, 371 F.3d at 203. The private interest factors include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* The public interest factors are as follows:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.*

<u>Analysis</u>

The court answers the threshold question of whether suit may have been brought against DECA in the Central District in the affirmative, given that DECA is headquartered in the Central District; thus, transfer of venue to the Central District is permissible under 28 U.S.C. § 1404(a). Accordingly, the court finds it necessary to weigh the applicable private interest and public interest factors to determine whether the Central District is the clearly more convenient venue versus the plaintiff's chosen venue, the Southern District. *See Volkswagen II*, 545 F.3d at 315.

_Private Interest Factors:_

(1) _Access to sources of proof_ [1]

DECA avers that this factor weighs in its favor because the documents relating to design, development, testing, and marketing of the product at issue, as well as product models and prototypes, are located in its California headquarters. Def.'s Brief [21] at 9. _In re Genentech, Inc._, 566 F.3d 1338, 1345 (Fed. Cir. 2009), states: "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." DECA argues that transport of the documents for trial will impose a significant and unnecessary burden. _See id._ at 1346 (holding that district court erred in denying a transfer where the plaintiff's chosen venue would impose a significant and unnecessary burden on the petitioners to transport documents that would not be incurred in the requested venue).

DECA claims that other sources of proof are located at the facility of DECA System in Bundang, Korea. Def.'s Brief [21] at 9. DECA argues that the Central District is 1,850 miles closer to Korea than the Southern District, and thus, the more convenient forum. _Id._ Conversely, Skyhawke argues that sources of proof found in Korea are located outside of the Central District, thus this does not weigh in favor of transfer. Pl.'s Brief [25] at 11.

DECA also highlights the fact that Skyhawke's 938 patent is for a product developed in Wayne City, Illinois and suggests that all documents relating to this product's development will be found in Illinois–not Mississippi. Def's Brief [21] at 9. Skyhawke denies this, and claims all

---

[1] Both DECA and Skyhawke argue that several of their witnesses reside in their respective venues. These arguments are addressed more in-depth under the cost of attendance for witnesses factor.

documents related to the 938 patent were transferred to Skyhawke's possession. Pl.'s Brief [25] at 10.

Skyhawke further argues that in addition to having its principal place of business in the Southern District and employing ninety-six residents of the Southern District, all documents, records, and other evidence relating to the inventions and prosecution histories of the two Skyhawke patents at issue are located in the Southern District at its Ridgeland facility. Pl.'s Brief [25] at 2, 10. Additionally, Skyhawke claims that documents relating to the development of the 498 product, financial records relating to damages incurred, documents relating to the commercial success of the products at issue, and the alleged infringing devices that DECA sold in Mississippi are all located in the Southern District. *Id.* at 10-11. Accordingly, Skyhawke urges this court to find that this factor does not weigh in DECA's favor where Skyhawke would be equally as inconvenienced should its choice of venue be disturbed.

While the court agrees with the observation in the *Genentech* case that the bulk of the evidence in patent matters is often presented by the alleged infringer – in this case DECA – it is clear that SkyHawke maintains records in the Southern District that will be relevant. *In re Genentech,* 566 F.3d at 1345. Moreover, while DECA has certainly not waived its rights to contest venue by filing an answer and counterclaim, its pleadings suggest that SkyHawke's records will also be relevant.  For example, DECA claims, *inter alia*, that the patents at issue are invalid for SkyHawke's failure to satisfy the statutory requirements of 35 U.S.C. §§101, et. seq. *See* Answer to Am. Compl.[28].  Records and other evidence regarding SkyHawke's compliance, or lack thereof, with the statutory requirements are more likely to be in SkyHawke's possession.

On balance, this factor is either neutral or very slightly favors DECA.

5

(2) *Compulsory process*

DECA alleges that this court's subpoena powers will not extend to any of the witnesses in this case, given that a number of their identified witnesses reside in or near the Central District. Def.'s Brief [21] at 8. DECA contends the fact that the Central District is "a venue with usable subpoena power....weighs in favor of transfer, and not only slightly." *In re Genentech*, 566 F.3d at 1345. Conversely, Skyhawke argues that the Southern District has subpoena power over party witnesses and that the analysis of this factor only applies to non-party witnesses. *See Emanuel v. SPX Corp.*, 2009 U.S. Dist. LEXIS 86094, at *16 n.2 (E.D. Tex. Sept. 21, 2009). Skyhawke further asserts that this factor is neutral–and if not, weighs against transfer–because neither the Central District nor the Southern District has compulsory process over any of the identified witnesses from Korea[2] or over Mr. Kent Barnard, the inventor of the 938 patent and a resident of Indiana.

Skyhawke is correct in its assessment that the compulsory process factor involves a factual analysis of non-party witnesses versus party witnesses. *See NovelPoint Learning LLC v. LeapFrog Enters.*, 2010 U.S. Dist. LEXIS 128906 at *17 (E.D. Tex. Dec. 6, 2010)("This factor weighs heavily for transfer if the majority of non-party witnesses are located within the [requested venue]."). It is unclear whether the identified witnesses at the DECA System facility in Korea are non-party witnesses rather than party witnesses. Assuming they are non-party witnesses, neither the Central District nor the Southern District could compel them to appear at trial. The same can be said of the inventor of the 938 patent, an Indiana resident.

---

[2] Skyhawke notes that the witnesses from the Bundang, Korea facility are employees of DECA's parent company and suggests that, as such, they are likely party witnesses not third-party witnesses. Pl.'s Brief [25] at 9.

Accordingly, this factor is essentially neutral as to both parties. It is worth noting, however, that "if this court cannot compel a witness's attendance at trial, neither party is prevented from using the witness's videotaped deposition at trial." *Symbol Technologies, Inc. v. Metrologic Instruments Inc*., 450 F.Supp.2d 676, 679 (E.D.Tex.2006).

(3) *Cost of attendance for witnesses*

This factor has been referred to as the most important private interest. *In re Genentech*, 566 F.3d at 1343 (citations omitted). DECA estimates the distance between the two forums to be 1,850 miles, which makes travel for DECA's witnesses inconvenient. Def's Brief [21] at 6. The Fifth Circuit has established the "100-mile rule," which states: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317.

DECA identified three of its officers as material witnesses on the subjects of design, development, and marketing of the alleged infringing product, all of whom reside in the Central District of California. Def.'s Brief [21] at 5. DECA argues that these witnesses will incur a "dramatic burden in terms of cost, time away from family, and time away from other personal and professional obligations" if required to travel to the Southern District for trial. *Id.* To the extent that former employees of DECA may be necessary witnesses, those former employees are said to currently reside in the Los Angeles and Seattle, Washington areas–much closer to the Central District than the Southern District. *Id.* The Fifth Circuit has recognized that witnesses who must travel for trial incur not only a monetary burden, "but also the personal costs associated with being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317.

7

DECA argues that the previously identified witnesses who live in Korea will incur greater costs due to a lack of direct flights from Seoul to Jackson, Mississippi. Def's Brief [21] at 6. DECA identifies three officers from its parent-corporation DECA System as material witnesses–Junha Park (Software Development Manager), Gisu Lee (Hardware Development Manager), and Suk Chul Ham (Global Marketing Manager)– who may have knowledge regarding the design, development, and/or marketing of the alleged infringing product. According to DECA, the fact that there are no direct flights from Seoul, Korea to Jackson, Mississippi and no direct flights from Los Angeles, California to Jackson, Mississippi should weigh in its favor since this means increased costs and increased travel time for DECA's witnesses.[3]

Additionally, DECA suggests that should the inventor or anyone else involved in securing the patent be identified as necessary third-party witnesses those witnesses would have no connection to the Southern District. As a result, DECA argues that the Southern District would be no more convenient for those potential witnesses than the Central District. Def.'s Brief [21] at 7.

For all of the aforementioned reasons, DECA argues that this factor overwhelmingly weighs in its favor. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (holding that district court erred in refusing to "considerably weigh" witness convenience in favor of

_____

[3] In support of this argument, DECA cites *Semiconductor Corp. v. Hynix Semiconductor, Inc*., 2010 U.S. Dist. LEXIS 104616 at *20 (E.D. Tex 2010)("[T]he existence or non-existence of direct flights can impact the analysis of travel time."). It is of note that this case cites dicta in a footnote from *Volkswagen I* wherein the Fifth Circuit, in calculating travel time for witnesses, makes note of the lack of direct flights from the city where witnesses reside to the plaintiff's chosen venue. *See Volkswagen I,* 371 F.3d at 205 n. 4.

transfer, where the identified witnesses "would need to travel approximately 900 more miles" to attend trial in the original venue versus the defendant's requested venue); *see also In re Genentech*, 566 F.3d at 1345 (finding error in the district court's denial of transfer where a "substantial number of material witnesses reside in the transferee venue...and no witnesses reside within the [original forum]).

Conversely, Skyhawke has identified as material witnesses three of its officers, who are inventors of the 498 product, and who all reside in the Southern District. Pl.'s Brief [25] at 7. Skyhawke contends that their witnesses will be equally inconvenienced by traveling to the Central District should venue be changed. Ultimately, Skyhawke argues that where a transfer in venue would simply shift the inconvenience from one party to another, this factor is neutral and does not support granting DECA's motion. *See Aloft Media, LLC v. Yahoo!, Inc.*, 2009 U.S. Dist. LEXIS 48716 at *19 (E.D. Tex. June 10, 2009)("Because the Northern District of California would be more convenient for Defendants and their witnesses, and the Eastern District of Texas would be more convenient for [Plaintiff] and its witnesses, this factor is neutral with regard to the parties and their witnesses.").

The Fifth Circuit has recognized that pursuant to the 100-mile rule the additional distance to be traveled for trial in a proposed venue "means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen I*, 371 F.3d at 205. However, where a transfer in venue serves to shift inconvenience from one party to the next, this factor does not weigh in favor of granting the movant's request given that the convenience of all parties and witnesses should be considered.

*See id.* at 204. Thus, where DECA has identified three of its officers as essential witnesses and Skyhawke has identified three of its officers as essential witnesses, this factor is neutral given that a transfer of venue would result in transferring the increased costs and inconvenience to Skyhawke.

A typical patent case involves witnesses who come from all over the country or world. *Symbol Technologies,* 450 F. Supp. 2d at 679 (citation omitted). *See Aloft Media,* 2009 U.S. Dist. LEXIS 48716 at *12 ("[T]his factor may weigh against transfer or be neutral when the relevant witnesses are spread throughout the country or the world.")(citations omitted). With regard to the DECA System witnesses traveling from Korea, the court finds the increased travel time of the witnesses from the DECA System facility in Korea may weigh in DECA's favor, but only slightly, as foreign travel will likely inconvenience these witnesses regardless of whether they are traveling to the Central District or the Southern District. "Thus, regardless of where the trial is held, many witnesses, including third-party witnesses, will likely need to travel a significant distance." *Symbol Technologies,* 450 F. Supp. at 679 (citation omitted).

(4) *Other Practical Problems*

DECA again argues that all documentary evidence and witnesses in this case are located in either California and Korea and that in granting a transfer to a venue in closer proximity to the relevant witnesses and evidence this court will further the interests of ease, expediency and cost of trial. Def.'s Brief [21] at 10. Conversely, Skyhawke avers that to the extent DECA argues in favor of a transfer because witnesses and evidence from Korea are closer to the Central District, DECA is incorrect as a matter of law. *See In re Genentech*, 566 F.3d at 1344 (finding that district court erred in giving significant weight to the inconvenience of European witnesses where

witnesses would be traveling a significant distance no matter where they testified).

The factual considerations asserted by DECA in support of its contention that this factor weighs in its favor are essentially restatements of previously asserted facts, namely that the majority of the documents and witnesses in the instant case may be found in or in closer proximity to the Central District. Given that DECA has not made any novel arguments nor identified any other practical problems for the court's consideration, the court finds this factor is neutral.

<u>*Public Interest Factors:*</u>

(1) *Local interest*

DECA argues that its company employs over thirty local residents and has become a prominent presence in the local economy of the Central District–generating $10 million in sales in 2010 alone. Def.'s Brief [21] at 10. DECA emphasizes the fact that promotional events for its product are held in conjunction with local golf retail stores and Southern-California-based golf publications and that it has contributed to various local charitable organizations. DECA contends that because the reputation and business activities of its officers and employees are at issue in this case, the Central District has an interest in the outcome. *See In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009)("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community.").

According to DECA, the only connection between the accused product and the Southern District is the fact that the product is sold here. DECA purports sales in the Southern District to be less than 0.12% of its nationwide sales in 2010. DECA avers that sale of the allegedly

infringing product, without more, is insufficient to demonstrate a local interest for the purposes

of a transfer of venue analysis. Def's Brief [21] At 11. In support of this argument, DECA cites

*In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008), a patent infringement case

which held that there was no local interest in the original venue merely because the accused

product was sold there given that none of the parties had an office in the plaintiff's chosen venue,

no witnesses resided there, and no evidence was located there.

　　　Skyhawke argues that its chosen venue is the venue wherein its sole facility was founded

in 1998, and as such Skyhawke's presence in the Southern District is not "recent, ephemeral, [or]

an artifact of litigation." *In Re Zimmer Holdings, Inc*., 609 F.3d 1378, 1381 (Fed. Cir. 2010).

Skyhawke submits that ninety-six residents of the Southern District, as well as all of its officers

and directors, work at its Ridgeland facility. Pl.'s Brief [25] at 13-14. Moreover, Skyhawke

emphasizes that DECA intended for its infringing product to be sold and used in Mississippi, as

evidenced by the digital maps of approximately one-hundred-fifty Mississippi golf courses

contained on its product. *Id*. at 14. For all of the aforementioned reasons, Skyhawke argues that

there is a strong local interest in prosecuting this matter in the Southern District.

　　　The Federal Circuit in *TS Tech* found no local interest in the plaintiff's chosen venue

because the only connection to that venue was that the infringing product was sold there. In so

finding, the court noted that there were no witnesses, no principal places of business of any party,

and no evidence located in the original venue. *TS Tech*, 551 F.3d at 1321. Conversely, in the

instant case, Skyhawke has a facility in Ridgeland, Mississippi, witnesses reside here, and

Skyhawke's physical evidence is located at its facility. Moreover, as pointed to by Skyhawke,

DECA has presumably directed its product at Mississippi consumers given that the product

contains digital maps of Mississippi golf courses. Accordingly, while DECA makes a valid argument that the Central District has a local interest in this matter, the court finds the Southern District likewise has a local interest that is equal to that of the Central District in that Skyhawke's sole facility, witnesses and documents are located in the Southern District and given that the alleged infringing product is being sold here.[4] Thus, the court finds this factor to be neutral.

(2) *Administrative difficulties*

DECA argues that disposition and trial timelines are slightly shorter in the Central District as opposed to the Southern District. Def.'s Brief [21] at 12. DECA cites Administrative Office of the United States Courts data,[5] which lists the Central District median disposition time as 5.6 months and median time to trial as 18.5 months. The Southern District's median disposition time is listed as 8.1 months with a median time to trial of 23.9 months. Thus, the Southern District's median time to trial is 5.4 months behind that of the Central District. Skyhawke argues that this slightly shorter time frame should be accorded minimal weight, if any. Moreover, Skyhawke notes that the Federal Circuit has referred to this as the "most speculative" factor in the analysis. *See In re Genentech*, 566 F.3d at 1347.

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Id.*(citation omitted). The Federal Circuit in *In re Genentech* further noted:

Without attempting to predict how this case would be resolved and which court

---

[4]That the infringing product is sold in the Southern District is given minimal consideration as it is also sold in numerous other places.

[5]http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2010/tables/C05Mar10.pdf (last visited May 4, 2011).

might resolve it more quickly...when...several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors.

*Id.*

While recognizing that this factor is clearly the most speculative, the court finds that a difference of approximately five months in average time of disposition is significant enough to slightly weigh in favor of DECA. However, given that the other factors are essentially neutral, the court, in keeping with the reasoning of *Genentech*, affords this factor little weight.

(3) *Forum's Familiarity with the Governing Law and* (4) *Conflict of Law Problems*

Both parties agree that the two remaining factors in the transfer of venue analysis are neutral as to both parties.

<u>*Conclusion*</u>

This case could have been brought in either of the two jurisdictions at issue.  This is not a case such as *TS Tech* where the plaintiff had no real connection with the chosen forum, or such as *Genentech* where a substantial number of material witnesses resided in the transferee venue and no witnesses resided in the original forum. *See TS Tech*, 551 F.3d at 1321; *see also Genentech*, 566 F.3d at 1345.  Here, SkyHawke has a substantial presence in this District, a number of witnesses are located in this District and some key records are located in this District.

While not determinative, a plaintiff's choice of venue is afforded deference. *Volkswagen II*, 545 F.3d at 315. DECA has the burden of showing that its preferred venue is clearly more convenient. *See id.* It failed to meet the burden as most of the factors in the analysis are neutral. Only one or two slightly favor a transfer. A change of venue would simply transfer any inconvenience DECA might suffer to SkyHawke.  The plaintiff's choice of forum should be

upheld.

IT IS, THEREFORE, ORDERED, that Defendant DECA's [20] Motion to Transfer

Venue is DENIED.

SO ORDERED, THIS the 11th day of May, 2011.

s/ Michael T. Parker
United States Magistrate Judge

15